2007 WY 22

**In the Matter of the WORKER'S COMPENSATION CLAIM OF Daniel J. DAVID, an Employee of PDQ Transport, Inc.**

**Daniel J. David, Appellant (Petitioner),**

**v.**

**State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).**

**No. 06–101.**

Supreme Court of Wyoming.

Feb. 8, 2007.

Representing Appellant: Sean W. Scoggin of Tiedeken & Scoggin, P.C., Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; and Kristi M. Radosevich, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶1]   Daniel J. David (David) appeals an order of the Office of Administrative Hearings denying medical and temporary total disability benefits for a lower back injury on the grounds that David had not met his burden of establishing that the requested benefits were for a work-related injury.  We affirm.

### ISSUES

[¶2]   David sets forth three issues in his brief:

I.  Whether the Office of Administrative Hearing [sic] examiner erred as a matter

of law when he applied the incorrect burden of proof at the hearing of this matter.

II. Whether the Office of Administrative Hearing [sic] erred as a matter of law in failing to consider the facts of this case under the second compensable injury rule.

III. Whether the Office of Administrative Hearing [sic] examiner's decision that Mr. David's treatment and claims for disability benefits after September 13, 2004 were not work related for the purposes of worker's compensation benefits was arbitrary and capricious and not supported by the substantial evidence presented at the hearing and the standing case law.

## FACTS

[¶ 3] In July of 2004, David was working for PDQ Transport of Cheyenne as a truck driver. He submitted an injury report to the Wyoming Workers' Safety and Compensation Division (Division) on July 22, 2004, claiming that an injury to his lower back occurred while he was strapping a tarp over a load. David had a long history of lower back problems. He had been treated for a herniated disc in the mid–1980's and suffered a non-work related lower back injury in July of 2001 that included pain radiating into his right leg. David received periodic chiropractic treatments for his back. He also had been treated for lower back and hip pain in early 2004.

1. § 27–14–601. **Payment or denial of claim by division** ... [.]

....
(b) Following review of each bill and claim for medical and hospital care pursuant to W.S. 27–14–401(b), the division may approve or deny payment of all or portions of the entire amount claimed and shall:
(i) Notify the employee and the health care provider in writing of any portion of a claim for which the employee may be liable for payment;
(ii) Provide the health care provider with a detailed monthly statement of respective claims and bills for services rendered and the amount approved for payment;
(iii) Provide the employer with a detailed monthly statement of all medical and hospital claims affecting his experience rating.
Wyo. Stat. Ann. § 27–14–401(b)(LexisNexis 2005) provides:

[¶ 4] The Division concluded that David had suffered a compensable work-related injury and on August 11, 2004, issued a Final Determination opening a case and awarding medical benefits. On August 25, 2004, the Division issued a Final Determination awarding David temporary total disability benefits. Sometime in mid-September David fell at home, causing further injury to his back. On September 29, 2004, the Division notified David that pursuant to its authority under Wyo. Stat. Ann. § 27–14–601(b) (LexisNexis 2005),[1] it would no longer approve payment of any benefits for claims connected with the July 21, 2004 injury. The Division determined that "a new incident occurred on 9/13/2004 and current medical treatment is no longer directly and completely related to the work incident."

[¶ 5] David objected to the Division's determination, and a contested case hearing was scheduled. In its pre-hearing disclosure statement, the Division framed the issue before the hearing examiner as to whether David's back injury was the product of a pre-existing condition or an intervening trauma, and that the burden was on David to establish the compensability of his injury. In his disclosure statement, David countered that Wyo. Stat. Ann. § 27–14–601(b) did not give the Division the authority to terminate benefits and, since benefits had been awarded, the burden was on the Division to seek modification pursuant to Wyo. Stat. Ann. § 27–14–605(a) (LexisNexis 2005).[2] David reiterated

No fee for medical or hospital care under this section shall be allowed by the division without first reviewing the fee for appropriateness and reasonableness in accordance with its adopted fee schedules.

2. § 27–14–605. **Application for modification of benefits** ... [.]

(a) If a determination is made in favor of or on behalf of an employee for any benefits under this act, an application may be made to the division by any party within four (4) years from the date of the last payment for additional benefits or for a modification of the amount of benefits on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud. The division may, upon the same grounds and within the same time period, apply for modification of medical and disability benefits to a hearing examiner or the medical commission, as appropriate.

that position at the commencement of the hearing. The hearing examiner took the question regarding the burden of proof under advisement and proceeded with the hearing. Both parties produced evidence. David testified and described his back injury that occurred while he was strapping a load onto his truck. He acknowledged his history of back problems but insisted that the pain related to this injury was different than that associated with his prior injuries. David attributed the cause of his fall in mid-September of 2004 to weakness in his leg caused by his work-related injury. He described the injury resulting from the fall as a "mild" scrape on his upper back and denied that the fall had any effect on his work-related back injury. David also offered the deposition testimony of his treating physician and physical therapist. Both medical professionals opined that David's benefit claims were related to the July 7, 2004 work injury. The Division's evidence consisted of medical records detailing David's history of medical treatment for his back.

[¶ 6] On August 12, 2005, the hearing examiner issued an order denying benefits. Initially, the examiner rejected David's argument that the Division had to file a petition to modify under § 27–14–605(a) instead holding that the Division could approve or deny any claim for medical benefits pursuant to § 27–14–601(b), and the burden was on David to establish that his claims for benefits were related to an injury that arose out of and in the course of his employment. The hearing examiner concluded that David had failed to meet that burden, finding that the medical opinions offered by his treating physician and physical therapist were not persuasive because neither of them possessed a complete medical history of David's back treatments. The district court affirmed the hearing examiner's decision and David has now brought the matter before this Court.

## STANDARD OF REVIEW

[¶ 7] We do not afford any special deference to the district court's decision. We review the case as if it has come to us directly from the administrative agency. *Alcorn v. Sauer Drilling Company*, 2006 WY 15, ¶ 6, 126 P.3d 924, 925 (Wyo.2006) (citing *Bailey v. State ex rel. Wyoming Workers' Compensation Division*, 2002 WY 145, ¶ 9, 55 P.3d 23, 26 (Wyo.2002)). The scope of our review is dictated by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*Olivas v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2006 WY 29, ¶ 11, 130 P.3d 476, 481–82 (Wyo.2006). When a hearing examiner has concluded that a worker's compensation claimant failed to meet his or her burden of proof, our review is pursuant to the arbitrary and capricious standard:

Under the arbitrary, capricious and abuse of discretion standard, we are charged with examining the entire record. In our examination and review of a hearing examiner's determination, we defer to the hearing examiner's findings of fact. We will

examine conflicting and contradictory evidence to see if the hearing examiner reasonably could have made its findings based on all the evidence before it. The findings of fact may include determinations of witness credibility, as the hearing examiner is charged with determining the credibility of the witnesses. In our review, we will not overturn the hearing examiner's determinations regarding witness credibility unless they are clearly contrary to the overwhelming weight of the evidence.

*Finley v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2006 WY 46, ¶ 7, 132 P.3d 185, 187–88 (Wyo.2006) (quoting *Boyce v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2005 WY 9, ¶ 6, 105 P.3d 451, 454 (Wyo.2005); and *Brees v. Gulley Enterprises, Inc.,* 6 P.3d 128, 132 (Wyo.2000)).

## DISCUSSION

■ [¶ 8] Initially, David contends that the hearing examiner erred as a matter of law when he applied § 27–14–601(b) and placed the burden of proof on him. He argues that once the Division determined that he had suffered a compensable injury and awarded medical and temporary total disability benefits, termination of those benefits could only be accomplished by a petition for modification by the Division under § 27–14–605(a).

■ [¶ 9] This is not the first opportunity we have had to consider the interrelation between § 27–14–601(b) and § 27–14–605(a). In *Martinez v. State ex rel. Wyoming Workers' Compensation Division,* 917 P.2d 619 (Wyo.1996), the claimant suffered a work-related elbow injury on July 21, 1993. Five days later he was arrested after an altercation with police. While incarcerated, the claimant received medical treatment for the same elbow. Claimant was initially awarded benefits, including temporary total disability. Claimant continued to receive benefits until January of 1994, when the employer and Division objected to further payments and sought to recover payments already made on the grounds of mistake. After a contested case hearing, the hearing examiner concluded that the employer and Division had failed to meet their burden under § 27–14–605(a) and, accordingly, denied the employer's and Division's request to recoup benefits already paid and awarded the claimant benefits on all outstanding claims. On petition for review, the district court agreed that the employer and Division had the burden of proof pursuant to § 27–14–605(a) as to whether any benefits already received by the claimant were mistakenly paid. The court, however, reversed the hearing examiner on the question of claimant's outstanding claims, holding that the claimant had the burden of proving that he was entitled to compensation for those claims. 917 P.2d at 620–21. On appeal to this Court, the question was the proper allocation of burden of proof. It is worthwhile for our present purposes to quote extensively from that discussion:

> We have repeatedly stated that a claimant has the burden of proving all the essential elements of his worker's compensation claim by a preponderance of the evidence. See, e.g., *Padilla v. Lovern's, Inc.,* 883 P.2d 351, 354 (Wyo.1994); *Gilstrap v. State ex rel. Wyoming Workers' Compensation Division,* 875 P.2d 1272, 1273 (Wyo.1994). We have also recognized, however, that the party who seeks to reopen or modify a worker's compensation case under § 27–14–605(a) has the burden of proof. *Britton v. Halliburton Services,* 895 P.2d 45, 48 (Wyo.1995).
>
> In reaching its conclusion that the employee had the burden of proving that he was entitled to receive benefits on his outstanding claims, the district court relied on Wyo. Stat. § 27–14–606 (1991). That section states:
>
> > Each determination or award within the meaning of this act is an administrative determination of the rights of the employer, the employee and the disposition of money within the worker's compensation account as to all matters involved. No determination shall be final without notice and opportunity for hearing as required by this act.
>
> Section 27–14–606. We considered this statute in *Herring v. Welltech, Inc.,* 660 P.2d 361 (Wyo.1983), and stated that, under the language of the statute, "the em-

ployer must be advised of each award of compensation or allowance of any expense claim and [be] given the opportunity to object." 660 P.2d at 366. See also *Padilla*, 883 P.2d at 354. The Herring Court concluded that each award or claim is a separate matter for administrative determination and held:

> It follows that the employer is entitled to dispute any award or claim on the basis that it is unreasonable or improper, and certainly can raise the question as to whether the award or claim is causally related to the industrial accident which occurred or whether it may be attributable to some other event.

660 P.2d at 366. **From the clear language of § 27–14–606 and this Court's decisions which have interpreted the statute, it is obvious that the normal process for an employer's objection applied to the employee's outstanding claims. It follows, then, that the employee bore the usual burden of proving that he was entitled to receive benefits for his outstanding claims. To place the burden of proof on the employer to dispute an employee's right to receive benefits on any further claims after the employee's first claim has been approved would effectively nullify the provisions of § 27–14–606.**

The employee likens his case to *State ex rel. Wyoming Workers' Compensation Division v. Jerding*, 868 P.2d 244 (Wyo.1994). In that case, the Workers' Compensation Division petitioned under § 27–14–605(a) to reopen the claimant's case, seeking to terminate the claimant's right to receive any further benefits because it made a mistake in concluding that the claimant's injury was compensable. 868 P.2d at 246. The Court ostensibly placed the burden of proving that a mistake had been made and that the claimant was not entitled to receive any future benefits upon the Workers' Compensation Division. 868 P.2d at 250.

An important distinction exists, however, between the case at bar and the *Jerding* case which prevents *Jerding* from controlling our decision in this case. In *Jerding*,

the Workers' Compensation Division was seeking to revisit its initial determination that the claimant's injury was compensable. 868 P.2d at 246. In the portion of this case which pertains to the employee's outstanding claims, the Workers' Compensation Division was not contesting the compensability of the initial injury. Instead, it was arguing that the employee's outstanding claims should not be paid because his current disability was caused by his altercation with the police. The Workers' Compensation Division aptly stated its position in its brief:

> It is therefore important to distinguish what the [Workers' Compensation] Division disputes with regard to [the employee's] claims and what it does not dispute. The [Workers' Compensation] Division does not deny that [the employee] suffered a work-related injury on July 21, 1993—it does not now seek a determination that when [the employee] injured his elbow on July 21, 1993, he was not acting within the course and scope of his employment. What the [Workers' Compensation] Division questions now is the percentage, if any, of [the employee's] current disability which can be attributed to the July 21, 1993 work injury. This question is appropriate in light of the medical testimony that all or some percentage of [the employee's] current disability may be attributable to the July 26, 1993 altercation, unrelated to [the employee's] employment.

The employee also asserts that the Workers' Compensation Division should have been estopped from disputing the compensability of his claims. The employee relies on a statement in *Herring* as being support for his argument:

> Once the accident is acknowledged to have occurred in the course of employment and not to have been due to the culpable negligence of the employee, the employer is estopped from taking a contrary position at a later date and after some claims have been paid. . . .

660 P.2d at 366.

It is true in the case at bar that the employer and the Workers' Compensation Division did not contest the compensability of the initial injury. In fact, the employer signed the consent and waiver form, consenting to the first payment of temporary total disability benefits to the employee. **We agree that the employer and the Workers' Compensation Division were estopped from contesting the compensability of the initial injury except under the provisions of § 27–14–605(a). However, as we explained earlier in this opinion, the same analysis does not apply to the employee's outstanding claims. Since each new claim or award involved a separate administrative determination under § 27–14–606, the employer and the Workers' Compensation Division were entitled to contest the employee's outstanding claims by arguing that the employee's altercation with the police caused his current disability.**

917 P.2d at 621–22 (emphasis added; footnote omitted). Since each new claim or award involves a separate administrative determination under § 27–14–606, the claimant is required to prove that he or she is entitled to receive benefits for all outstanding claims even if he or she has received previous awards for the same injury. *Id.;* see also *Tenorio v. State ex rel. Wyoming Workers' Compensation Division,* 931 P.2d 234, 239–41 (Wyo.1997) (since Division was only challenging future payments and not contesting the compensability of employee's original claim or seeking to recover any previous awards, the burden was on the employee to "prove that the extent of her current claim is the result of her work-related injury"); and *Fritz v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 937 P.2d 1345, 1347–48 (Wyo.1997).

[¶ 10] Here, the Division did not contest the initial determination that David's injury was work-related or seek to recover any benefits paid. It challenged the compensability of an outstanding claim on the grounds that David's medical treatments were no longer related to his work injury but rather to an intervening accident or to a pre-existing condition. The hearing examiner properly placed the burden of proof to establish the compensability of the outstanding claims on David.

[¶ 11] In his next argument, David contends that this case is similar to the situation confronted by this Court in *Carabajal v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2005 WY 119, 119 P.3d 947 (Wyo.2005) wherein benefits were granted under the second compensable injury rule. The second compensable injury rule is applicable when "an initial compensable injury ripens into a condition requiring additional medical intervention." *Carabajal* at ¶ 12, 119 P.3d at 951 (quoting *Yenne–Tully v. Workers' Safety and Compensation Division,* 12 P.3d 170, 172 (Wyo. 2000)). In other words, "a subsequent injury is compensable if it is causally related to the initial compensable work injury." *State ex rel. Wyoming Workers' Safety and Compensation Division v. Pickens,* 2006 WY 54, ¶ 31, n. 6, 134 P.3d 1231, 1241, n. 6 (Wyo.2006). In *Carabajal,* the employee had suffered a work-related lower back injury. Several years after last receiving benefits for his injury, the employee sought medical treatment for back pain. The employee applied for medical and temporary total disability benefits citing his previous work injury as the cause of his current problems. The hearing examiner denied benefits and the district court affirmed. *Carabajal,* at ¶¶ 3–7, 119 P.3d at 949–50. On appeal to this Court, the employee argued that the hearing examiner erred by not considering the applicability of the second compensable injury rule. *Id.* at ¶ 9, 119 P.3d at 951. While acknowledging that he had not explicitly raised the rule as a theory of recovery in the contested case hearing, the employee argued that the argument and evidence he presented were sufficient to alert the hearing examiner to his theory of recovery. *Id.* at ¶ 19, 119 P.3d at 953–54. We agreed with the employee:

> In the context of the second compensable injury rule, we have recognized that the hearing examiner "has an obligation to invoke and apply the rules of law that support a claimant's theory of the case." [*Pino v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 996 P.2d 679, 687 (Wyo.2000) ]. The informa-

tion presented by Mr. Carabajal was sufficient to alert the hearing examiner to Mr. Carabajal's theory of the case so that he should have applied the second compensable injury rule. Our determination is in accord with our holding in *Pino:*

We conclude that the hearing examiner failed to recognize that the issue before the agency was one of a second subsequent injury rather than simply one of proximate causation. Like a trial judge instructing a jury, the Office of Administrative Hearings has an obligation to invoke and apply the rules of law that support a claimant's theory of the case. It may be that this Court has explained the case in more detail and with more specificity than did Pino, but the fact remains that his theory of the case encompassed a second compensable injury. The hearing examiner should have invoked and applied the rule relied upon in the cited cases. Under the circumstances, the failure to do so constitutes a decision "not in accordance with law."

[*Pino,* 996 P.2d at 687.]

*Carabajal,* at ¶ 21, 119 P.3d at 954. David did not explicitly raise the second compensable injury rule in the proceedings before the hearing examiner but as was the case in *Carabajal* and *Pino,* he contends that his theory of the case sufficiently encompassed the concept, and the hearing examiner erred by not granting him benefits under the rationale of the rule.

[¶ 12] A further review of the record, however, shows that the second compensable injury rule was *not* part of David's theory of recovery either explicitly or implicitly. In his brief, David supports his argument that the rule is applicable here by citing the deposition testimony of his treating physician, Dr.Conklin:

Q: And did you have an opinion at that time as to the causation of the low back pain and strain for Mr. David?

. . . .

A: So the note says, low back pain strain. It should have been accompanied by herniated disc.

Q: And your opinion as to causation of those problems was what?

A: Work-related from lifting.

Q: Did the indication of the slip and fall in September 3rd of 2004, does that change your opinion at all, as to causation in October of 2004?

A: No. I deemed that a reexacerbation.

Q: What do you mean by that?

A: Meaning when you already have a problem and you just do something that exacerbates, makes it worse again, makes it flare up.

Q: And are those opinions you just gave to a reasonable degree of medical probability?

A: Yes, they are. I think so.

In his testimony, David claimed that his fall was caused by his work-related injury:

Q: Did there come a time then when you had some kind of a fall?

[David]: Yeah, in, I believe it was October—September or October. End of September. Yeah, I believe it was the end of September, I had an [sic] fall stepping down into my garage because of my right leg pain. Because of the nerve, when I tried to catch myself with the left foot, I fell against the floor and the step. And just a fall. And put a scrape on my back.

. . . .

. . . But it was because of the injury that I, you know, fell in the first place. I mean, it was just my leg giving out. And then from sciatic nerve pain going down my leg, I couldn't hold my weight up.

David, however, maintained that the fall did not result in any injury to his lower back nor did it re-exacerbate his work-related injury:

[David]: . . . And when I got to therapy the next day, [the physical therapist] asked me how I scraped my back. And I told her. That's how the whole discrepancy and the Workmens' Comp came back on it. It was a mild scrape on my back. Wasn't in the same place that my injury was.

Q: What part of the back did you have the scrape on?

A: Just the top of my spine. About a third of the way up my back. Probably

about four inches or so above where the original injury was....

Q: At the time of the fall, did you experience any kind of an onset of pain or anything in your low back?

A: Not increasing, you know, what I was already having.

. . . .

Q: And then when you had this fall that [your counsel] asked you about, how did that occur?

A: All right. I was going from my house into my garage. And when I went to step down the stairs [my] right leg went out from under me. The brunt of the pain was in my right leg and the nerve, you know, being in pain. And when I went to catch myself, I scraped my back when I slid down the step.

Q: What did you land on?

A: I landed on the threshold of the door.

Q: Did you land on your back on the steps?

A: I landed on my elbows and my back, more or less. I mean, it wasn't a fall per se, but a slip. It just scraped my back a little bit, probably six inches, eight inches above my tail bone, little scrape about the size of a quarter. More like a rug-burn type scrape.

. . . .

Q: Do you believe that the fall on the steps made your back pain worse?

A: No.

Q: Do you know why Dr. Conclin [sic] might have written a letter—looking at Claimant's Exhibit 11 indicating that you apparently tripped and re-exacerbated your back pain or your spine?

A: He apparently misunderstood the way I explained what happened to him [sic].

Q: So you don't know why he would describe that incident as having caused an exacerbation?

A: I don't know what exacerbation is.

Q: Well, let's ask you—you don't know why he would have said that incident caused a worsening of your condition?

A: I told him I had pain, but it wasn't really any different than it was before.

Even if you look at the therapy, the therapist said it didn't show any recognition of difference from before or afterwards in the therapy.

Q: Do you know why he would indicate—why it would have made your condition worse?

A: No. Other than I possibly told him at the time that there was, you know, a little bit more pain. But it was within a few days back to the same, you know, where it was. It didn't, I mean, really increase anything as far as difference, or changes, or recovery time, or anything like that.

Q: Well, do you know why a 9/17/04 report from your physical therapist would state that the fall on 9/13/04, it slowed your progress? And that note would also indicate that you had increased pain since the fall Monday night[?]

A: I had some increased pain, but you know, not a dramatic amount. And after a few days, like I said, it was better again.

David's counsel echoed that testimony in his opening remarks:

That on September 13, he will testify that he did have a fall. What had happened was he was having some weakness in his right leg that was associated with the herniated disk which Dr. Conclin [sic] testified to in his deposition, in his low back had some weakness with that. Had a fall where he will testify that he did have a scrape on his back, but that had no effect on his low back.

I mean, the records show that he had a fall but that he had just a very slight increase in his low back pain and that Dr. Conclin's [sic] treatment, the physical therapy treatment was all the same. There were no changes in that.

And in his closing:

. . . [This] possible fall is nothing. It's not a new injury. It's not an exacerbation. It's just that [sic] a slip that didn't change any of his treatment.

[¶ 13] At the contested case hearing, David's theory was that while his initial work injury caused him to slip and fall, the resulting injury was relatively minor in nature, affecting a different area of his back and did

not exacerbate or otherwise impact the original injury. Effectively, David disclaimed any intent to recover benefits based on compensability of the injuries resulting from his fall. David's theory of recovery was based on a linkage of his outstanding claims to the compensability of his original injury; it did not encompass a claim, even implicitly, under the second compensable injury rule. Our discussions in *Carabajal* and *Pino* are inapposite to the situation here. Under the circumstances, the hearing examiner's failure to address the second compensable injury rule was not in error.

[¶ 14] In his final issue, David insists that he met his burden of proof and the record contains sufficient evidence to support his claim for benefits. David points to the opinion testimony of his treating physician and physical therapist that his back injury was work-related, and that his claims for benefits were related to that injury.

[¶ 15] The hearing examiner discounted the opinion testimony of David's experts finding them unpersuasive because neither opinion was based upon a complete medical history from David. A "hearing examiner is entitled to disregard an expert opinion if he finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant." *Taylor v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2005 WY 148, ¶ 15, 123 P.3d 143, 148 (Wyo.2005) (citing *Franks v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2002 WY 77, ¶ 18, 46 P.3d 876, 879–80 (Wyo.2002) (In re Franks); and *Clark v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 934 P.2d 1269, 1271 (Wyo.1997)).

It is the obligation of the trier of fact to sort through and weigh the differences in evidence and testimony, including that obtained from medical experts. *Morgan v. Olsten Temporary Services*, 975 P.2d 12, 16 (Wyo.1999). "The task of determining the credibility of the witnesses and weighing the evidence is assigned to the [hearing examiner], and its determination will be overturned only if it is clearly contrary to the great weight of the evidence." [*Hurley v. PDQ Transport, Inc.*, 6 P.3d 134, 138 (Wyo.2000) ]

"Where the testimony of a disinterested witness is not directly contradicted but there are circumstances which controvert the testimony or explain it away, or if such testimony is clouded with uncertainty and improbability, or otherwise appears to be unreliable or unworthy of belief, the trier of fact is not bound to accept it. Justice does not require a court or jury to accept as an absolute verity any statement of a witness merely because it is not directly or specifically contradicted by other testimony, and there are many things which may properly be considered in determining the weight that should be given the direct testimony of a witness even though no adverse verbal testimony is adduced. If such testimony is evasive, equivocal, confused, or otherwise uncertain, it may be disregarded."

*Krause v. State ex rel. Wyo. Workers' Compensation Div. (Matter of Krause)*, 803 P.2d 81, 83 (Wyo.1990).

*Taylor*, at ¶ 16, 123 P.3d at 148.

[¶ 16] David's treating physician admitted that in forming his opinion, he was not aware that David had been treated prior to July of 2004 for pain in his lower back that radiated into his right leg. He acknowledged that the information could have an impact on a determination of causation. David's physical therapist admitted that she did not have information about the back treatments David underwent between 2001 and the date of his work injury nor about right hip pain that David experienced in May of 2004, when forming her opinion. Under the circumstances, we cannot say that the hearing examiner was wrong to discount the medical opinions proffered by David's witnesses. The determination by the hearing examiner that David had failed to meet his burden of proof was not arbitrary or capricious.

## CONCLUSION

[¶ 17]   The hearing examiner's determination that David had not met his burden of establishing the compensability of his outstanding claims for benefits was not arbitrary or capricious.   The order denying benefits is affirmed.