204 P.3d 967 (2009)
2009 WY 46
In the Matter of the Worker's Compensation Claim of: Elmer CHAVEZ, Appellant (Petitioner),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).
No. S-08-0069.
Supreme Court of Wyoming.
March 31, 2009.
*968 Representing Appellant: Ethelyn Boak, Cheyenne, Wyoming.
Representing Appellee: Bruce A. Salzburg, Attorney General; John William Renneisen, Deputy Attorney General; James Michael Causey, Assistant Attorney General.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
BURKE, Justice.
[¶ 1] Elmer Chavez applied to the Wyoming Workers' Safety and Compensation Division for reimbursement of medical expenses relating to his back surgery in 2006. Mr. Chavez claimed that the surgery was necessary because of a work-related injury he suffered in 1989. The Division denied the benefits. Mr. Chavez requested a hearing on the denial of his benefits, and the matter was referred to the Medical Commission. The Commission affirmed the Division's denial of benefits, and Mr. Chavez appealed to the district court. The district court affirmed the denial of benefits, and Mr. Chavez now raises the matter for our review. We, too, will affirm the denial of benefits.

ISSUES
[¶ 2] Mr. Chavez raises two issues for our review, which we have reworded slightly:
1. Whether the Medical Commission Panel erred in failing to analyze the case as "involving injuries which occur over a substantial period of time," resulting in a decision not in accordance with law.
2. Whether the Medical Commission erred in failing to invoke and apply the "second compensable injury" rule in this case, resulting in a decision not in accordance with law.
This case is easier to understand, however, if we begin the discussion with an issue listed by the Division:
A. Was the decision of the Medical Commission denying benefits to Mr. Chavez supported by substantial evidence?

FACTS
[¶ 3] Mr. Chavez was employed as a veterinary technician by the Goshen Veterinary Clinic in Torrington, Wyoming, from 1979 to 1981, and again from 1983 to 1991. His duties included routine chores and assisting with surgery at the clinic, but the majority of *969 his time was spent working with cattle at the local livestock auctions. Starting in approximately 1981, Mr. Chavez began getting occasional chiropractic treatments for a "sore back" and related problems.
[¶ 4] On November 17, 1989, Mr. Chavez injured his back while working with a cow. After this incident he began experiencing "extreme" pain "worse than it had ever been." He was treated by a chiropractor over the next few weeks, and the condition improved over time. He was released from further treatment on January 27, 1990, after informing his chiropractor that he was able to resume his normal activities without pain or discomfort.
[¶ 5] Mr. Chavez testified that he continued having pain in his back and leg. Some days were "pretty bad," but there were also days when the pain "wasn't present." He did not seek any additional treatment over the next fifteen months, until the spring of 1991 when he told a veterinarian he worked with that his back hurt and his legs felt numb. The veterinarian suggested that he see a doctor. Mr. Chavez went to his primary care physician, who referred him to Dr. Beehler, a neurosurgeon in Scottsbluff, Nebraska. Dr. Beehler diagnosed a "large disc herniation" between the fourth and fifth lumbar vertebrae, and operated on Mr. Chavez on May 9, 1991. During the surgery, Dr. Beehler discovered a calcifying disc and spur that could not be completely removed, and the doctor predicted that Mr. Chavez "may well have trouble in the future." A short while after the surgery, however, Dr. Beehler reported that Mr. Chavez was "definitely improving," and that his back pain was "pretty well cleared," although he still had "a little pain in the left lower extremity."
[¶ 6] After his 1991 surgery, Mr. Chavez continued to suffer from lower back pain, and from occasional numbness in his left leg. In November 2005, Mr. Chavez consulted with Dr. Beer, a neurosurgeon in Cheyenne. He told Dr. Beer that he had a "10-year long history of low back pain," with the symptoms becoming much worse over the past few months. Dr. Beer performed surgery to decompress and fuse the third, fourth, and fifth lumbar vertebrae. According to Mr. Chavez, this surgery was successful in alleviating most of the pain in his back and legs.
[¶ 7] The Workers' Compensation Division paid for Mr. Chavez's chiropractic treatments after the 1989 incident. It also paid for his surgery in 1991, and for pain management treatments afterward. However, the Division declined to pay for the 2006 surgery, based on a determination that the surgery was not related to the work injury he had suffered in 1989, and that the need for medical treatment was due to pre-existing degenerative disc disease and arthritis in addition to natural aging and the activities of day-to-day living. Mr. Chavez requested a hearing on the denial of his benefits, and the matter was referred to the Medical Commission.
[¶ 8] The Commission convened its hearing on February 27, 2007. It received into evidence a large number of Mr. Chavez's past medical records, and heard testimony from Mr. Chavez. The Commission also considered the deposition testimony of Dr. Beer, offered into evidence by Mr. Chavez, and the telephonic testimony of Dr. Ruttle, who was called as a witness by the Division. The conflicting testimony from these two doctors will be examined in detail in the discussion below.
[¶ 9] The Commission affirmed the denial of benefits. Mr. Chavez appealed that decision to the district court. After the district court affirmed the Commission's decision, Mr. Chavez filed the appeal before us now.

STANDARD OF REVIEW
[¶ 10] Our review of an administrative agency's action is governed by the Wyoming Administrative Procedure Act, which provides in pertinent part that the reviewing court shall:
(i) Compel agency action unlawfully withheld or unreasonably delayed; and
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

*970 (B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2007). We recently established that the substantial evidence standard will be applied any time we review an agency's findings of fact, and explained that the appropriate question under this standard is whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's decision. Dale v. S & S Builders, LLC, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo.2008). This is the standard we apply to the issue of whether the Commission's denial of benefits to Mr. Chavez was supported by substantial evidence.
[¶ 11] Mr. Chavez's remaining issues raise the question of whether the Medical Commission misapplied the law. With regard to issues of this type, we have stated that:
The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are questions of law over which our review authority is plenary. . . . We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law.
State ex rel. Workers' Safety and Comp. Div. v. Garl, 2001 WY 59, ¶ 9, 26 P.3d 1029, 1032 (Wyo.2001). In other words, we review de novo an agency's conclusions of law. Dale, ¶ 26, 188 P.3d at 561.

DISCUSSION

A. Substantial evidence
[¶ 12] In its Findings of Fact, Conclusions of Law, and Order in this case, the Medical Commission stated that, "[b]ased on the referral, pre-trial conference, and the parties' disclosure statements," the issue before it was "Whether the Employee/Claimant's current medical treatment on his low back is related to the work injury of November 17, 1989." In its Conclusions of Law, the Commission accurately stated that the employee/claimant must prove by a preponderance of the evidence that "the injury arose out of and in the course of employment." Wyo. Stat. Ann. § 27-14-102(a)(xi); Bruns v. TW Services, Inc., 2001 WY 127, ¶ 12, 36 P.3d 608, 613 (Wyo.2001). We have explained that "An injury arises out of and in the course of employment when a causal connection exists between the injury and some condition, activity, environment or requirement of the employment." Wright v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2007 WY 101, ¶ 8, 160 P.3d 1129, 1132 (Wyo.2007).
[¶ 13] The evidence before the Commission included Dr. Beer's medical opinion that Mr. Chavez's 2006 surgery was related to the 1989 injury, and Dr. Ruttle's medical opinion that it was not. The Commission accepted the opinion of Dr. Ruttle. Our task is to review the entire record and determine whether it contains relevant evidence that "a reasonable mind might accept" as supporting the Commission's choice. Dale, ¶ 22, 188 P.3d at 561. This task is made easier because the Commission's Order explains in some detail why it found Dr. Ruttle's opinion more persuasive than Dr. Beer's.
[¶ 14] The parties do not dispute that there was a connection between Mr. Chavez's 2006 surgery and his 1991 surgery. When Dr. Beehler performed the 1991 surgery, he could not completely remove a calcifying disc and spur in Mr. Chavez's back, and the doctor predicted "trouble in the future." That prediction came true, leading to Mr. Chavez's 2006 surgery. In their testimony to the Commission, Dr. Beer and Dr. Ruttle agreed that there was a close relationship between the 2006 surgery and the 1991 surgery.
[¶ 15] The two doctors disagreed, however, on whether the medical problems addressed by the two surgeries were caused by the workplace injury Mr. Chavez had suffered in 1989. Dr. Beer testified that the 1989 injury was not resolved or healed, and *971 Mr. Chavez continued to suffer "identical pain for years." He testified that Mr. Chavez had degenerative disc disease that had been "accelerated" by the 1989 injury. He believed that Mr. Chavez's "original L4-5 disc herniation" was caused by the 1989 injury, and that the back condition requiring surgery in 1991, and again in 2006, was a natural extension of that original injury.
[¶ 16] Dr. Ruttle testified to the contrary. Dr. Ruttle agreed that Mr. Chavez had suffered a work-related injury in 1989, but believed that Mr. Chavez "recovered" and "got better" after that, largely because he was released from further treatment by the chiropractor and then went untreated for approximately fifteen months. Dr. Ruttle explained that Mr. Chavez's prior medical history indicated that he was "a patient who knew when to go and get treatment when his back bothered him." Dr. Ruttle also found it significant that when Mr. Chavez sought treatment from Dr. Beehler, who performed the 1991 surgery, Mr. Chavez told the doctor that he had been suffering back pain for more than ten years, but apparently made no mention of the 1989 incident as a cause of that pain. In addition, Dr. Ruttle noted that Mr. Chavez had complained of back pain and obtained chiropractic treatments for several years prior to the 1989 injury. Accordingly, Dr. Ruttle provided his opinion that Mr. Chavez's surgeries in 1991 and 2006 were not related to the 1989 incident, but instead were necessary due to the "recurrence of what was a chronic, preexisting problem."
[¶ 17] The Commission noted several reasons for affording more weight to the opinion of Dr. Ruttle and less to that of Dr. Beer. Dr. Beer had based his opinion on an incomplete medical history, and was not aware that Mr. Chavez had complained of back pain and sought treatments prior to the 1989 injury. Dr. Beer's opinion was based, in part, on a belief that Mr. Chavez had not suffered pain in his legs until after the 1989 incident. However, records from Mr. Chavez's chiropractic treatments indicated complaints of leg pain dating from at least 1983. The fact that Dr. Beehler had found a calcifying disc and spur in Mr. Chavez's back during the 1991 surgery indicated that it was a long-standing problem. That was more consistent with Dr. Ruttle's belief that Mr. Chavez suffered from a chronic, preexisting problem, and less consistent with Dr. Beer's belief that the condition was caused by an injury in 1989.
[¶ 18] When an agency "disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors," its decision is sustainable under the substantial evidence test. Dale, ¶ 22, 188 P.3d at 561. Particularly when faced with conflicting medical opinions, the agency had the
responsibility, as the trier of fact, to determine relevancy, assign probative value, and ascribe the relevant weight given to the evidence presented. Clark v. State ex rel. Wyoming Workers' Safety & Compensation Div., 934 P.2d 1269, 1271 (Wyo. 1997). The Commission is in the best position to judge and weigh medical evidence and may disregard an expert opinion if it finds the opinion unreasonable or not adequately supported by the facts upon which the opinion is based. Id.; Matter of Goddard, 914 P.2d 1233, 1238 (Wyo.1996).
Spletzer v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2005 WY 90, ¶ 21, 116 P.3d 1103, 1112 (Wyo.2005). We do not re-weigh the evidence, but defer to the agency's decision so long as it is based on relevant evidence that a reasonable mind might accept as supporting that decision. Id., ¶ 22, 116 P.3d at 1112.
[¶ 19] There is substantial evidence in the record to support the Commission's choice to accept Dr. Ruttle's opinion over Dr. Beer's, and we defer to that choice. Based on Dr. Ruttle's opinion, there were at least two bases for the Commission's conclusion that Mr. Chavez was not entitled to benefits. First, Dr. Ruttle opined that there was no causal connection between the 2006 surgery and the 1989 work-related injury, making the 2006 surgery non-compensable. Second, Dr. Ruttle believed that Mr. Chavez suffered from a preexisting condition, also making the 2006 surgery non-compensable. See Wyo. Stat. Ann. § 27-14-102(a)(xi)(F). The Commission's findings of fact were supported by *972 substantial evidence, and its legal conclusions were sound. We therefore affirm the Commission's decision to deny Mr. Chavez benefits for his 2006 surgery.[1]

1. Injuries which occur over a substantial period of time
[¶ 20] While many workers' compensation cases involve acute injuries caused by a specific incident, Wyoming law also allows for claims involving injuries that occur over substantial periods of time. Wyo. Stat. Ann. § 27-14-603(a) provides as follows:
The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to prove by competent medical authority that his claim arose out of and in the course of his employment and to prove by a preponderance of evidence that:
(i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;
(ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;
(iii) The injury can fairly be traced to the employment as a proximate cause;
(iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and
(v) The injury is incidental to the character of the business and not independent of the relation of employer and employee.
Mr. Chavez claims that the Medical Commission was required to analyze his case under this statute. Its failure to apply the statute is, according to Mr. Chavez, reversible error. As noted earlier, whether the Commission correctly applied the law is a question we review de novo.
[¶ 21] Mr. Chavez admits that he never cited this statute to the Medical Commission, and never argued that it should apply. However, Mr. Chavez now urges that the Medical Commission had a duty to invoke and apply the law that supports his claim, even if he did not advance that theory at the hearing. He cites two cases in support of his argument. The oldest is Pino v. State ex rel. Wyoming Workers' Safety & Comp. Div., 996 P.2d 679 (Wyo.2000). Although Mr. Pino had not mentioned the second compensable injury rule during his agency hearing, we concluded that
the hearing examiner failed to recognize that the issue before the agency was one of a second subsequent injury rather than simply one of proximate causation. Like a trial judge instructing a jury, the [agency] has an obligation to invoke and apply the rules of law that support a claimant's theory of the case. It may be that this Court has explained the case in more detail and with more specificity than did [Mr.] Pino, but the fact remains that his theory of the case encompassed a second compensable injury. The hearing examiner should have invoked and applied the rule.
Id. at 687. Following Pino, in Carabajal v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2005 WY 119, ¶ 21, 119 P.3d 947, 954 (Wyo.2005), we noted that, "In the context of the second compensable injury rule, we have recognized that the hearing examiner has an obligation to invoke and apply the rules of law that support a claimant's theory of the case." (Punctuation omitted.) We therefore ruled that, where the information presented by the claimant "was sufficient to alert the hearing examiner to" the theory, the hearing examiner "should have applied the second compensable injury rule." Id.
[¶ 22] Both of the cases cited by Mr. Chavez involved the agency's failure to invoke and apply the second compensable injury rule. It is not clear that the Medical Commission should also be required, of its own accord, to invoke and apply the statute *973 relating to injuries occurring over a substantial period of time. That is particularly true where, as here, the claimant does not merely fail to explain or mention that his injuries occurred over a substantial period of time, but instead actively asserts a contrary theory  that the injury was related to and caused by a single work-related incident. We need not decide whether the Commission is under such an obligation, however, because our reading of the record shows that the information presented by Mr. Chavez was not sufficient to alert the hearing examiner to an unspoken theory that his injuries occurred over a substantial period of time.
[¶ 23] We have explained that Wyo. Stat. Ann. § 27-14-603 "was intended to require a higher burden of proof for workers claiming benefits for illnesses or injuries developing over time without a definite triggering accident or event." Yenne-Tully v. Workers' Safety & Comp. Div., 12 P.3d 170, 172 (Wyo. 2000). Applying this statute, we upheld an award of benefits to a worker who had experienced "constant jostling of his spine in the truck cab and heavy labor attendant to the truck driving." KG Const., Inc. v. Sherman, 2005 WY 116, ¶ 24, 120 P.3d 145, 151 (Wyo. 2005). Significantly, in that case a doctor testified that these work conditions were a "major contributing factor" to the injury. Id., ¶ 14, 120 P.3d at 149. We also ordered that benefits must be awarded to a worker whose "heavy occupation as a diesel mechanic for years required him to engage in repetitive, constant lifting and bending," and, significantly, whose doctor testified that this work was the cause of his medical problems. Baxter v. Sinclair Oil Corp., 2004 WY 138, ¶ 13, 100 P.3d 427, 431-32 (Wyo.2004).
[¶ 24] On appeal, Mr. Chavez claims that his "degenerative back injury . . . resulted gradually from the hard physical labor of wrestling day-in and day-out with large bovines in the sale barn." While the record does contain evidence of Mr. Chavez's hard work, it contains no evidence suggesting that his work was the cause of his degenerative back condition. Both Dr. Beer and Dr. Ruttle described Mr. Chavez's condition as degenerative disc disease, and agreed that the condition could develop over a period of time. Dr. Beer stated that the term degenerative disc disease could be used to describe either a natural aging process or the process triggered by an acute injury, and he identified the 1989 injury as the acute injury triggering the process in Mr. Chavez. He did not attribute the problem to any work-related activity other than the 1989 incident. Dr. Ruttle stated that the progression of the condition could have been triggered by trauma, natural progression, or day-to-day activities, and specifically denied that it was caused by Mr. Chavez's work.
[¶ 25] The statute Mr. Chavez relies on, Wyo. Stat. Ann. § 27-14-603(a), explicitly requires a claimant to prove that the injury occurring over time was caused by the conditions of his work. Mr. Chavez presented no evidence to the Commission to suggest this causal connection. In the absence of evidence of that required causal connection, there was insufficient information to alert the Commission to this unspoken theory. Moreover, even if the Commission had considered Mr. Chavez's case under this statute, it could not have awarded benefits without evidence that his work conditions were the cause or a contributing cause of the condition for which Mr. Chavez underwent surgery in 2006. In this situation, the Commission did not err in failing to apply this statute to Mr. Chavez's case, or in failing to analyze the injury as one occurring over a substantial period of time.

2. Second compensable injury rule
[¶ 26] In a similar argument, Mr. Chavez next claims that it was error for the Commission not to apply the second compensable injury rule to his case. This rule has been explained as follows:
We have long recognized that an industrial accident can give rise to more than one compensable injury. Baldwin v. Scullion, 50 Wyo. 508, 62 P.2d 531, 539 (Wyo.1936). We generally refer to this principle as the "second compensable injury rule." The second compensable injury rule applies when "an initial compensable injury ripens into a condition requiring additional medical intervention." Yenne-Tully v. State ex rel. Workers' Safety and Comp. Div., 12 P.3d 170, 172 (Wyo.2000).
Carabajal, ¶ 12, 119 P.3d at 951. "In other words, a subsequent injury is compensable if it is causally related to the initial compensable *974 work injury." David v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2007 WY 22, ¶ 11, 151 P.3d 280, 287 (Wyo. 2007) (punctuation omitted).
[¶ 27] Mr. Chavez claims that "Dr. Beer clearly connected [Mr. Chavez's 2006] fusion to his work activities," and claims that "was sufficient to warn the [Commission] that a second compensable injury analysis was needed." We reject this claim. As discussed above, Dr. Beer's opinion was that Mr. Chavez's 2006 surgery was causally related to the initial compensable work injury he received in 1989. If the Commission had accepted Dr. Beer's opinion, that might have been a sound basis for awarding benefits to Mr. Chavez under the second compensable injury rule. What Mr. Chavez overlooks, however, is that the Commission explicitly chose to give more weight to the opinion of Dr. Ruttle, who testified that Mr. Chavez's 2006 surgery was not the result of the incident in 1989. This testimony supported the Commission's finding that the 2006 surgery was not causally related to the compensable work injury that occurred in 1989. Based on this finding, the Commission concluded that the 2006 surgery was not compensable. In these circumstances, again, we cannot say that the Commission erred, and we affirm its decision in all respects.
NOTES
[1] Dr. Ruttle testified, and the Medical Commission found, that neither Mr. Chavez's 2006 surgery nor his 1991 surgery was related to his 1989 injury. The Division had already paid for the 1991 surgery, but that does not mean it was also required to pay for the 2006 surgery. Each new claim invokes a new and separate administrative decision, and each time, the employee has the burden of proving he is entitled to benefits. See, e.g., David v. State ex rel. Wyoming Workers' Safety & Comp. Div., 2007 WY 22, ¶¶ 8-10, 151 P.3d 280, 285-87 (Wyo.2007).