# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 96

**APRIL TERM, A.D. 2013**

**August 13, 2013**

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

JOSEPH O. HAYES,

Appellant
(Petitioner/Claimant),

v.                                                                  S-12-0280

STATE OF WYOMING, ex rel.,
WYOMING WORKERS' SAFETY AND
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Platte County*
The Honorable John C. Brooks, Judge

*Representing Appellant:*
    Lynn Boak of Lynn Boak, Attorney at Law, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
    Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy
    Attorney General; Michael J. Finn, Senior Assistant Attorney General; Kelly
    Roseberry, Assistant Attorney General.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1] Joseph O. Hayes, who suffers from cystic fibrosis, sought worker's compensation benefits for treatment of pulmonary and other symptoms he believed were related to a workplace accident. The Office of Administrative Hearings (OAH) upheld the Wyoming Workers' Safety and Compensation Division's (Division) denial of benefits, and the district court affirmed the OAH decision. Mr. Hayes appeals to this Court, claiming the OAH erred by failing to find a causal connection between his work injury and his later medical conditions. He asserts he presented sufficient evidence of the causal connection by his own testimony and the opinion of a registered nurse. We affirm.

## ISSUES

[¶2]    Although Mr. Hayes phrases the issues differently, the issues requiring resolution in this case are:

1.  Whether there was substantial evidence to support the OAH conclusion that Mr. Hayes failed to prove the causal connection between his job-related broken hand and his later symptoms requiring hospitalization.

2.  Whether the OAH properly disregarded Mr. Hayes' expert's report.

3.  Whether medical testimony was required to establish causation.

The State's statement of the issue contains the same general questions.

## FACTS

[¶3]    Mr. Hayes was diagnosed with cystic fibrosis when he was a few months old. Cystic fibrosis is an inherited chronic disease of the exocrine glands that affects the pancreas, respiratory system and sweat glands. "It is marked by the production of abnormally viscous mucous by the affected glands, usually resulting in chronic respiratory infections and impaired pancreatic function." The American Heritage Stedman's Medical Dictionary (2002). As a child, Mr. Hayes had frequent bouts of pneumonia associated with his condition. When he became older, he used regular strenuous exercise to keep his lungs relatively free of mucous and, therefore, less susceptible to infection. In fact, prior to the incident at issue here, Mr. Hayes had not had any serious lung issues for many years. Although Mr. Hayes exercised regularly, he disregarded his physicians' recommendations to use "daily Flutter therapy with compression and nebulizer" to aid in keeping his airways open.

[¶4]    Mr. Hayes was employed as a police officer by the Guernsey, Wyoming police department. He was required to be certified in the use of a taser and on August 18, 2010,

1

underwent a training session which included him being "tased." When the taser was energized, he fell from a kneeling position onto a mat and his chest hit his left hand. He went to the emergency room, where x-rays showed his left hand was broken. The emergency room doctor prescribed pain medication and directed him to consult with an orthopedic surgeon, who recommended surgery.

[¶5]    On August 21, 2010, Mr. Hayes went back to the emergency room complaining of pain in his chest. A chest x-ray did not show any rib fractures, although there were findings consistent with cystic fibrosis. He was diagnosed with a chest contusion and prescribed additional pain medication. The next day, August 22, he returned to the emergency room complaining of "out of control" pain, and received more pain medication. Mr. Hayes underwent surgery on August 24, 2010, to pin the fractured hand.

[¶6]    On September 11, 2010, Mr. Hayes returned to the emergency room with an "awful" metallic taste causing him to feel nauseous. The emergency room physician thought the metallic taste was coming from a sinus infection or the pins in his hand. Mr. Hayes was prescribed antibiotics for the sinus infection.

[¶7]    On September 17, 2010, Mr. Hayes again visited the emergency room with complaints of joint pain, chest tightness, chills, fever, weakness, and coughing. Chest x-rays showed evidence of cystic fibrosis but were "stable from August." He was admitted to the hospital, and Jeffrey A. Cecil, M.D. treated him for the joint pain and gave him additional antibiotics and respiratory treatments. Mr. Hayes' condition improved and he was discharged on September 21, 2010, with a diagnosis of "pneumonia, sinusitis with cystic fibrosis."

[¶8]    Although the Division granted benefits for the medical treatment associated with his broken hand, it denied benefits for his hospitalization and associated treatment, stating that treatment for pneumonia and cystic fibrosis was not related to his work injury. Mr. Hayes disagreed with the Division's decision and requested a hearing. He stated his ailments were the result of being unable to exercise because of his broken hand. The matter was referred to the OAH for a contested case hearing.

[¶9]    At the contested case hearing, Mr. Hayes presented a report from registered nurse Rhonda Walker (Nurse Walker) in which she opined that his hospitalization was related to his work accident. Mr. Hayes also testified on his own behalf. The Division presented an expert medical opinion from Lawrence Repsher, M.D., who stated there was no evidence of any clinically significant injury to Mr. Hayes' chest wall or pneumonia, and he had adult cystic fibrosis.

[¶10] After the hearing, the OAH upheld the Division's denial of Mr. Hayes' requests for benefits on the ground he had not met his burden of proving his hospitalization and associated treatment were causally connected to the tasing incident. Mr. Hayes petitioned

the district court for review, and it affirmed the OAH decision. He then appealed to this Court.

**STANDARD OF REVIEW**

[¶11] On appeal from a district court's review of an administrative agency's decision, we consider the case as if it had come directly from the administrative agency. *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div'n,* 2011 WY 14, ¶ 10, 247 P.3d 845, 848 (Wyo. 2011); *Dutcher v. State ex rel. Wyo. Workers' Safety & Comp. Div'n,* 2010 WY 10, ¶ 9, 223 P.3d 559, 561 (Wyo. 2010); *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2013):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> (B) Contrary to constitutional right, power, privilege or immunity;
>
> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>
> (D) Without observance of procedure required by law; or
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶12] We review the agency's findings of fact by applying the substantial evidence standard. *Dale,* ¶ 22, 188 P.3d at 561. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.,* 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo.

3

2005) (citation omitted). Findings of fact are supported by substantial evidence if we can discern a rational premise for the findings from the evidence in the record. *Id.*

[¶13] Considering an agency determination that the claimant did not satisfy his burden of proof, we have said:

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale,* ¶ 22, 188 P.3d at 561 (citations omitted). An agency's conclusions of law are always reviewed *de novo,* and we will affirm only if they are in accordance with the law. *Moss v. State ex rel. Wyo. Workers' Comp. Div'n,* 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010); *Dale,* ¶ 22, 188 P.3d at 561.

## DISCUSSION

[¶14] A claimant for workers' compensation benefits must prove all of the essential elements of his claim by a preponderance of the evidence. *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div'n,* 2011 WY 118, ¶ 14, 259 P.3d 1161, 1165 (Wyo. 2011); *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Slaymaker,* 2007 WY 65, ¶ 13, 156 P.3d 977, 981 (Wyo. 2007). "'This burden includes establishing the cause of the condition for which compensation is claimed and proving that the injury arose out of and in the course of employment.'" *Middlemass,* ¶ 14, 259 P.3d at 1165, quoting *Hanks v. City of Casper,* 2001 WY 4, ¶ 6, 16 P.3d 710, 711 (Wyo. 2001). Although pre-existing conditions are excluded from the definition of compensable injury by Wyo. Stat. Ann. § 27-14-102(a)(xi)(F) (LexisNexis 2013), an employee may recover if his employment "aggravated, accelerated, or combined with the disease or infirmity" to produce the condition for which compensation is sought. *Dutcher*, ¶ 14, 223 P.3d at 562.

[¶15] The OAH stated the following regarding the causation evidence in Mr. Hayes' case:

33. . . . . Hayes failed to establish the requisite casual (sic) connection between the symptoms and treatment from September 17, 2010, through September 21, 2010 and his August 18, 2010, left hand injury, which Dr. Bienz surgically treated on August 24, 2010. Indeed, the evidence presented did not inform this Office what Hayes was suffering from on the date he was admitted to Platte County Memorial. Thus, it was not possible for this Office to connect Hayes' August 18, 2010, work injury, to the various pain and pulmonary symptoms he complained of on September 17, 2010. Hayes may well be correct that he did not have pneumonia during his hospital stay in September 2010. Indeed, Dr. Repsher could find no evidence of pneumonia. That situation begs the question as to what caused Hayes' symptoms. Hayes himself acknowledged he was speculating that the electricity from the tasing caused his joint pain. There was no evidence presented at [the] hearing establishing the side effects, if any, of tasing. There was no evidence presented establishing that tasing causes an onset of sinusitis or other pulmonary symptom[s]. Nor was there any evidence presented that tasing causes joint pain. Because Hayes' symptoms between September 17, 2010 and September 21, 2010, do not appear to be the natural causes of tasing, medical testimony was necessary to demonstrate the required causal connection. This Office found Nurse Walker to be completely unqualified to render a medical opinion and her reasoning not well supported. . . . [T]his Office overruled the Division's objection to the admission of Nurse Walker's report and ruled her qualifications went to the weight of the evidence rather than its admissibility. In reviewing Nurse Walker's Overview, it is the clear impression of this Office that Nurse Walker strayed from reviewing Hayes' medical records into advocating for Hayes. Nurse Walker's credentials do not qualify her to render medical opinions.

34. . . . Dr. Repsher is extremely well qualified in pulmonary diagnosis and care. Dr. Repsher's opinion was very narrow. All he said was there was no evidence of a clinically significant chest wall injury and there was no evidence of pneumonia from September 17, 2010 through September 21, 2010. Dr. Repsher's opinion is accepted. However, that does not establish the cause of Hayes'

5

symptoms. Thus, this Office is left to speculate as to the cause of Hayes' complaints on September 17, 2010. This Office is not willing to do so. It should be noted that even if the evidence established Hayes suffered from pneumonia on September 17, 2010, there was no evidence connecting this condition to the tasing on August 18, 2010. It is the finding of this Office that Hayes has not proved the connection between his symptoms on September 17, 2010 through September 2[1], 2010 . . . to the tasing he underwent on August 18, 2010.

. . . .

47.     There was no evidence presented that Hayes' pain and pulmonary symptoms would be the immediate, natural or direct result of the tasing or of his broken finger. Thus, medical evidence establishing the causal relationship between his pain and pulmonary symptoms on September 17, 2010 . . . was necessary. There was no medical evidence presented establishing this causal relationship.

. . . .

50.     As noted above, there was no medical evidence presented that established a causal connection between the tasing incident on August 18, 2010 and Hayes' symptoms on September 17, 2010 through September 28, 2010 . . . Indeed, there was no evidence presented that established the cause of Hayes' symptoms on September 17, 2010 . . . Also, there was no[] evidence presented that tasing aggravates cystic fibrosis or causes fevers. Thus, there can be no finding of a material aggravation of any condition that Hayes suffered from prior to August 18, 2010.

[¶16] Mr. Hayes' argument that his causation evidence was sufficient is scattered. First, he challenges the hearing examiner's decision to disregard Nurse Walker's opinion and accept the Division's expert's opinion. We note this is not a case where the hearing examiner denied admission of a proposed expert witness opinion.[1] Instead, he admitted

---

[1] As the hearing examiner recognized, Wyo. Stat. Ann. § 16-3-108(a) (LexisNexis 2013) states: "In contested cases irrelevant, immaterial or unduly repetitious evidence shall be excluded and no sanction shall be imposed or order issued . . . unless supported by the type of evidence commonly relied upon by reasonably prudent men in the conduct of their serious affairs." The hearing examiner suggested that reasonably prudent men may rely on the advice or opinion of a nurse in the conduct of their serious affairs. It is unnecessary to determine, in this case, whether a registered nurse is generally qualified to offer a medical opinion because we conclude the hearing examiner properly disregarded Nurse Walker's opinion due to her lack of expertise in pulmonary issues and her failure to specifically connect Mr. Hayes' condition to his work injury.

6

the nurse's report but ultimately gave it no weight. When conflicting medical opinions are presented at the contested case hearing, the agency has the

> responsibility, as the trier of fact, to determine relevancy, assign probative value, and ascribe the relevant weight given to the evidence presented. *Clark v. State ex rel. Wyoming Workers' Safety & Compensation Div.,* 934 P.2d 1269, 1271 (Wyo.1997). The [agency] is in the best position to judge and weigh medical evidence and may disregard an expert opinion if it finds the opinion unreasonable or not adequately supported by the facts upon which the opinion is based. *Id.; Matter of Goddard,* 914 P.2d 1233, 1238 (Wyo.1996).

> *Spletzer v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 90, ¶ 21, 116 P.3d 1103, 1112 (Wyo. 2005). We do not re-weigh the evidence, but defer to the agency's decision so long as it is based on relevant evidence that a reasonable mind might accept as supporting that decision. *Id., ¶* 22, 116 P.3d at 1112.

*Chavez v. State ex rel. Wyo. Workers' Safety & Comp. Div'n,* 2009 WY 46, ¶ 18, 204 P.3d 967, 971 (Wyo. 2009).

[¶17] Nurse Walker did not have any specific educational background or vocational experience with cystic fibrosis or pulmonary complications; her opinions appeared to be based only upon a review of literature covering those medical issues. The hearing examiner's refusal to recognize her opinions is, therefore, understandable. Moreover, although she stated that pulmonary complications can result from a cystic fibrosis patient's failure to exercise or ingestion of pain medication, she did not relate a specific mechanism or process to the clinical findings in Mr. Hayes' case. As such, Nurse Walker's opinion could properly be found to be unreasonable and/or not adequately supported by the facts. *Chavez,* ¶ 18, 204 P.3d at 971. The record contains ample support for the hearing officer's ruling that Nurse Walker's opinion was not entitled to any weight.

[¶18] On the other hand, the hearing examiner accepted Dr. Repsher's narrow opinion that there was no evidence of chest wall injury or pneumonia. He concluded Dr. Repsher was "extremely well qualified in pulmonary diagnosis and care," and that conclusion is well supported in the record. Dr. Repsher had extensive education, professional experience and many publications in the realm of pulmonary disease and care. The hearing examiner properly weighed the expert evidence, and we will not interfere with his decision.

7

[¶19] Mr. Hayes also argues the OAH erred by ruling that expert medical testimony was necessary to establish causation in his case. We have stated that when a single incident is alleged to have caused an injury, medical testimony may not be required to establish causation. *Hampton v. State ex rel. Wyo. Workers' Safety & Comp. Div'n,* 2013 WY 17, ¶ 14, 296 P.3d 934, 938 (Wyo. 2013); *Thornberg v. State ex rel. Wyo. Workers' Comp. Div'n,* 913 P.2d 863, 867 (Wyo. 1996). This rule is limited, however, to injuries which are "immediately and directly or naturally and probably the result of an accident." *Thornberg,* 913 P.2d at 867. Regarding proof of aggravation of a preexisting condition we have stated that "expert medical testimony ordinarily will be required to establish the link between the worsening of the medical condition and the claimant's work activities, rather than some other factor." *Boyce v. State ex rel. Wyo. Workers' Safety & Comp. Div'n,* 2005 WY 9, ¶ 16, 105 P.3d 451, 456 (Wyo. 2005).

[¶20] As pointed out by Mr. Hayes, we ruled in *Herrera v. State ex rel. Wyo. Workers' Safety & Comp. Div'n,* 2010 WY 103, 236 P.3d 277 (Wyo. 2010), that medical testimony was not necessary to confirm the causal link between Mr. Herrera's need for a prescription anti-depression medication and his work-related physical injury. His medical records and uncontradicted personal testimony that the medication helped control his pain and blood pressure were sufficient to satisfy the causation element in his case. *Id.,* ¶¶ 23-24, 236 P.3d at 283-84.

[¶21] In *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div'n,* 2013 WY 62, 301 P.3d 137 (Wyo. 2013), by contrast, we ruled medical testimony was necessary. Mr. Jacobs developed abdominal pain after being prescribed an antibiotic to treat an infection resulting from his work-related injury and was diagnosed with antibiotic induced colitis. *Id.,* ¶ 4, 301 P.3d at 139. He continued to suffer from abdominal pain for many years and eventually the Division denied benefits on the grounds his abdominal pain was not associated with the work injury. *Id.,* ¶ 5, 301 P.3d at 140. After reviewing voluminous medical records, the Medical Commission concluded the claimant failed to prove the causal connection between his on-going abdominal pain and the work injury. We affirmed the Medical Commission decision because the medical professionals were unable to attribute his continued abdominal pain to the use of antibiotics years before. *Id.,* ¶¶ 19-20, 301 P.3d at 145-46. This Court remarked that, in contrast to cases like those discussed in *Thornberg,* expert medical testimony was necessary to demonstrate the causal connection between Mr. Jacob's continuing abdominal pain and his work place injury. *Id.,* ¶ 11, n.1, 301 P.3d at 142, n.1. We held the temporal relationship between his pain and the workplace injury, i.e., his pain started when antibiotics were used to treat the infection from his work injury, was insufficient to establish the necessary causal link. *Id.,* ¶¶ 19-25, 301 P.3d at 145-48.

[¶22] In some respects *Jacobs* is similar to the case at bar. There is arguably a temporal relationship between Mr. Hayes' injury and hospitalization for pulmonary and joint pain

8

issues one month later. Nevertheless, like in *Jacobs*, Mr. Hayes' subsequent hospitalization for unexplained lung and joint issues is not the type of immediate and direct or natural and probable result of an accident contemplated by the rule articulated in *Thornberg*. The present case involves complex issues related to cystic fibrosis, infection and the physical effects of tasing, making medical evidence necessary to establish causation. There was no credible medical evidence to connect the incidents.

[¶23] Even Mr. Hayes' position as to the cause of his hospitalization is somewhat confusing. In response to the Division's initial denials of his claims, he stated that his condition had nothing to do with his cystic fibrosis. As his argument developed, however, he maintained his cystic fibrosis was aggravated because his injuries from the tasing prevented him from exercising. His expert, Nurse Walker, agreed with that position and opined the lack of exercise led to pneumonia. Mr. Hayes, however, stated that he does not believe he had pneumonia (a position with which the Division's expert agreed) but that his condition was somehow related to the tasing. Contrary to the situation in *Herrara*, Mr. Hayes' evidence was confusing and contradictory and certainly did not confirm a causal relationship.

[¶24] Mr. Hayes also argues the fact that no specific cause of the symptoms leading to his hospitalization was determined should not preclude him from proving his work injury caused the symptoms. He cites *Murray v. State ex rel. Wyoming Workers' Safety & Comp. Div'n,* 993 P.2d 327 (Wyo. 1999), in support of his argument. In *Murray,* 993 P.3d at 328, the claimant sought workers' compensation benefits for a skin condition that developed after he drew a sample of raw gas at work. After visits to several medical practitioners, he was eventually diagnosed with an allergy to petroleum products. *Id.* at 329. The hearing examiner concluded the claimant had failed to meet his burden of proving the skin condition was related to his employment because he could not identify the specific source or chemical that caused his condition. *Id.* at 331.

[¶25] We reversed, stating "causation must be considered in light of all the circumstances surrounding the incident." *Id.* We observed that medical science "'probably never will be able to foretell accurately the reaction of every particular human body to every particular hurt it may sustain in industrial employment.'" *Id.* at 332, quoting *Baldwin v. Scullion,* 50 Wyo. 508, 62 P.2d 531, 539 (Wyo. 1936). Nevertheless, the medical evidence together with the claimant's testimony established his skin condition occurred on the work premises and was triggered by his exposure to chemicals while at work. It was, therefore, sufficient to establish causation despite the claimant's failure to identify the specific cause or chemical leading to his condition. *Id.* at 333.

[¶26] In *Murray,* there was a clear relationship between the claimant's medical condition and his work activities. Here, other than the fact Mr. Hayes was hospitalized within a month after the hand injury, there was no clear relationship between the work accident and his later condition. In addition, his case presents a complexity that did not exist in

9

*Murray*—Mr. Hayes suffers from a preexisting condition. Mr. Hayes apparently asserts that he should not be penalized because cystic fibrosis and the effects of tasing are poorly understood by medical science and his testimony that exercise helps keep his disease under control and he was unable to exercise because of his condition should be enough.

[¶27] Mr. Hayes did not, however, present any credible evidence that his condition was actually exacerbated by the tasing incident or his failure to exercise. Mr. Hayes was required to show his hospitalization was related to his work injury. This is true regardless of whether his condition was associated with pneumonia or any other aggravation of his pre-existing cystic fibrosis. He did not make that connection. *See Middlemass,* ¶ 27, 259 P.3d at 1168 (holding that regardless of whether the injury was an aggravation of a preexisting condition or a new injury, claimant was required to prove her condition was caused by her work activities).

[¶28] Finally, Mr. Hayes contends that the hearing examiner did not properly consider the possibilities that his chest contusion and/or the pain medication caused the condition that led to his hospitalization. Although Dr. Repsher did not opine as to the cause of Mr. Hayes' pulmonary problems, the doctor's conclusion that he did not suffer a significant chest wall injury from the tasing incident supports the hearing examiner's decision that Mr. Hayes did not meet his burden of proving the causal connection between the chest contusion from the tasing incident and his subsequent hospitalization. In addition, Mr. Hayes does not direct us to any other evidence relating the chest contusion to his later lung condition.

[¶29] With regard to the pain medication, Nurse Walker stated that the side effects of several pain medications include depressed respiration which can exacerbate cystic fibrosis. The hearing examiner, of course, rejected her opinion and we have affirmed that ruling. Furthermore, Mr. Hayes does not direct us to any medical evidence showing that he actually had depressed respiration as a result of the pain medication or that it led to an aggravation of his preexisting condition.

[¶30] In sum, Mr. Hayes maintains that he had been successful in keeping his cystic fibrosis under control for many years by engaging in regular, strenuous exercise. He was unable to exercise because of his work injury and within a month he experienced respiratory problems and joint pain. According to him, it is a natural conclusion that the injury led to his subsequent ailments. The problem with his argument is that he did not prove the critical causal link with credible medical evidence. Substantial evidence exists in the record to support the hearing examiner's decision to reject the causation evidence offered by Mr. Hayes and that conclusion was not contrary to the overwhelming weight of the evidence. *See Dale,* ¶ 22, 188 P.3d at 561.

[¶31] Affirmed.

10