# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 29

### OCTOBER TERM, A.D. 2023

### March 21, 2024

JUDY VALENCIA,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

S-23-0174

*Appeal from the District Court of Campbell County*
The Honorable James Michael Causey, Judge

*Representing Appellant:*
> Donna D. Domonkos, Domonkos & Thorpe, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Mark Klaassen, Deputy Attorney General; Peter Howard, Senior Assistant Attorney General; Holli J. Welch, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:** **This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Judy Valencia suffered an injury to her right knee which was covered by workers' compensation.  She later sought workers' compensation benefits for injuries to her left foot, ankle, and hammertoe, claiming they were causally related to her compensable right knee injury.  The Wyoming Department of Workforce Services, Workers' Compensation Division (Division) disagreed and denied benefits.  The Wyoming Medical Commission upheld the denial, concluding Ms. Valencia had failed to satisfy her burden of showing her compensable right knee injury caused her left foot, ankle, and hammertoe injuries.  The district court affirmed the Commission's decision.  We also affirm.

### ISSUES

[¶2]    Ms. Valencia raises two issues which we re-state as one:   Was the Medical Commission's decision that Ms. Valencia had not met her burden of showing her left foot, ankle, and hammertoe injuries were caused by her compensable right knee injury supported by substantial evidence?

### FACTS

[¶3]    On August 21, 2020, Ms. Valencia was working as an administrative assistant at R&G Electric, Inc., in Gillette, Wyoming, when she went outside to take pictures of hail damage to the building for R&G Electric's insurer.  She stepped in an indentation in the grass and hyperextended her right knee.  Dr. Mark Murphy diagnosed her with a right knee meniscus tear, which he surgically repaired on September 24, 2020.  Four days after surgery, Ms. Valencia began physical therapy twice per week with Brandy Johnson, PT, DPT.  On that date, Dr. Johnson noted, among other things, that Ms. Valencia had an "impaired gait." On December 17, 2020, Dr. Johnson documented that Ms. Valencia's gait had "normalized."  Ms. Valencia concluded physical therapy for her right knee on December 30, 2020.  Ms. Valencia applied for and received workers' compensation benefits for her right knee injury.

[¶4]    On March 31, 2021, Ms. Valencia returned to Dr. Murphy complaining of right knee pain.  Dr. Murphy noted Ms. Valencia "was doing [physical therapy] until the end of December and started walking[,] was doing okay walking 3 to 4 miles but went bowling . . . about a week ago and subsequently could not walk[,] . . . has difficulty with stairs[, and] the pain wakes her up at night and is around her patella on the right knee and her anterior knee." Dr. Murphy treated her right knee with an anti-inflammatory injection.

[¶5]    In the meantime, on March 9, 2021, Ms. Valencia visited Dr. Robert Grunfeld for left foot pain.  According to Dr. Grunfeld's notes:

1

> Patient is here for left foot pain. This has been going on for several years but she has noticed worsening . . . pronation . . . the last few months. Last summer she twisted her ankle and now has pain with walking longer distances. Her ankle feels unstable. She states that "bone in the middle arch has moved".
> . . .

Dr. Grunfeld diagnosed her with left calcaneal vaigus alignment, left equinus contracture, left posterior tibial tendinitis, and left fourth hammertoe. On April 14, 2021, he performed reconstructive surgery on Ms. Valencia's left foot, ankle, and hammertoe. In his post-operative notes, with respect to his correction of her left hammertoe, he stated: "Her toe was previously corrected, but it fused in an uncomfortable position[.]" Ms. Valencia again began physical therapy with Dr. Johnson.

[¶6]    On June 8, 2021, Ms. Valencia had a post-operative visit with Dr. Grunfeld. He noted:

> [Ms. Valencia] had some concerns with regards to her Worker's Compensation claim. In August 2020, specifically August 21, 2020[,] she had an injury while she was walking at work into a divot and her right knee gave out. She had a right knee surgery on 9/24/2020 with Dr. Murphy. Due to the alteration in her gait her favoring her operative side she ended up developing severe left foot pain. Patient states that she noticed that she was "walking funny" after the knee surgery. This does appear to be related to the patient's original Worker's Comp. claim with regards to the right knee surgery that she needed on 9/24/2020. She developed . . . progressive . . . left foot pain and deformity along with posterior tibial tendinitis. Surgery was successfully completed on April 14, 2021[,] of this year and she has been doing well. Patient states that she had no previous injury to the left foot but does have a history of a remote left ankle injury, which is not related to the problem that I'm currently treating her for.
>
> Hammertoe correction with [proximal interphalangeal] joint resection and pinning was completed at time of surgery due to progressive deformity from an antalgic gait, related to the knee surgery that the patient underwent on the contralateral lower extremity.

[¶7]    Ms. Valencia submitted the bills for the treatment she received on her left foot, ankle, and hammertoe to the Division, claiming her altered gait following her August 2020

2

right knee injury caused her left foot, ankle, and hammertoe injuries. The Division denied payment because Ms. Valencia's left foot, ankle, and hammertoe injuries were not related to her right knee injury. Ms. Valencia objected to the Division's determination and requested a hearing. The Division transferred the matter to the Medical Commission for a contested case hearing.

[¶8] Prior to the hearing, the Division referred Ms. Valencia to Dr. Ricardo Nieves for an independent medical evaluation (IME), which was completed on September 17, 2021. After examining Ms. Valencia and reviewing her medical records, he opined: "In my professional opinion within a reasonable degree of medical probability there is no causal relationship between the 8/21/2020 work injury and the left ankle-foot surgeries performed by Dr. Grunfeld on 4/14/2021." He determined Dr. Grunfeld's assessment that Ms. Valencia developed severe left foot pain and progressive deformity from her antalgic gait following her right knee surgery was "unfounded," "not supported by evidence-based medicine," and was contradicted by Dr. Grunfeld's March 9, 2021, report wherein he stated Ms. Valencia's left foot pain had been ongoing for several years, the pain had worsened in the last few months, and she had problems walking after twisting her ankle the previous summer. Dr. Nieves also noted Dr. Murphy's records showed that upon completing physical therapy for her right knee injury, Ms. Valencia was "walking 3 to 4 miles with no evidence on the medical records of problems with the left foot." Dr. Nieves recognized Ms. Valencia had a significant past medical history of foot problems, including bunionectomies on her right and left feet in 1985 and 1986, respectively; a corn removal on her left fifth toe in 1992; hammertoe correction on the right and left fourth toes in 1992; surgery to release plantar fascia on both the right and left sides in 2009; and a left ankle sprain in the summer of 2019. He opined that "within a reasonable degree of medical probability the 8/21/2020 workplace incident did not cause any temporary exacerbations of pre-existing conditions of the left foot and ankle" or "any permanent material aggravation of pre-existing conditions of the left foot and ankle." Dr. Nieves further stated the medical literature does not support a causal relationship between an injury to a lower limb based upon an individual favoring the opposite lower extremity.

[¶9] On September 30, 2021, Dr. Johnson authored a written opinion regarding the cause of Ms. Valencia's left foot, ankle, and hammertoe injuries. She stated that when Ms. Valencia began physical therapy on September 28, 2020, she was "limping significantly . . . to the point she was also complaining of back pain." According to Dr. Johnson, Ms. Valencia continued to limp for the next couple of months as she worked on getting her right knee to move correctly and to tolerate full weight while walking. "In that process, [Ms. Valencia] began to have left foot pain and . . . splaying of her left toes." Dr. Johnson stated Ms. Valencia continued to have left foot pain even after her gait normalized and even after she had no further issues with her right knee. She noted

> Altered gait pattern over several months can frequently cause
> foot pain and changes in the feet as clearly stated in a PubMed

3

article as follows: "In a normal, healthy person, gait is cyclical and symmetric process. However, when an abnormality is present in one of the joints, muscles, or bones of the complex system that regulates gait, this process is disrupted." "Very small variations in these things are usually nothing to worry about. However, if your foot shape or gait mechanics deviate too far from a 'normal,' neutral stride, you can start to become more susceptible to things like heel pain, shin splints, stress fractures, bunions, and other deformities or sports injuries." . . . Waco Foot and Ankle[,] January 2020.

Dr. Johnson opined Ms. Valencia's "[l]eft foot pain and damage very well could be the result of her altered gait pattern following her injury in August of 2020."

[¶10]   After holding a contested case hearing on August 3, 2022, the Medical Commission affirmed the Division's denial of benefits. It concluded Ms. Valencia had failed to prove she suffered a second compensable injury to her left foot, ankle, and hammertoe as a result of her August 2020 workplace accident or that her August 2020 right knee injury caused a material aggravation of her preexisting left foot conditions resulting in the need for medical care and surgery. In so concluding, it discounted the causation opinions of Dr. Johnson and Dr. Grunfeld and instead agreed with Dr. Nieves' opinion that there was no causal relationship between Ms. Valencia's right knee injury and her left foot, ankle, and hammertoe injuries. Ms. Valencia petitioned the district court for review of the Medical Commission's decision. The district court affirmed the decision, and Ms. Valencia timely appealed to this Court.

## STANDARD OF REVIEW

[¶11]   "When an appeal is taken from a district court's review of an administrative agency's decision, we examine the case as if it came directly from the agency, giving no special deference to the district court's decision." *McCallister v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 66, ¶ 7, 510 P.3d 1051, 1054 (Wyo. 2022) (citing *In re Vinson*, 2020 WY 126, ¶ 25, 473 P.3d 299, 308 (Wyo. 2020), and *Guerrero v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2015 WY 88, ¶ 11, 352 P.3d 262, 265 (Wyo. 2015)) (other citation omitted). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2023), which states in relevant part:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or

4

those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; [or]

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*Vinson*, ¶ 25, 473 P.3d at 308 (citation and internal quotation marks omitted).

[¶12] Pursuant to § 16-3-114(c)(ii)(E), "we review the agency's findings of fact by applying the substantial evidence standard." *McCallister*, ¶ 8, 510 P.3d at 1054 (citing *Vinson*, ¶ 26, 473 P.3d at 308). "Findings of fact are supported by substantial evidence if there is relevant evidence in the record which 'a reasonable mind might accept in support of the agency's conclusion.'" *Id.* (quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 11, 188 P.3d 554, 558 (Wyo. 2008)). When reviewing an agency's decision that a claimant did not meet her burden of proof, we apply the following standard:

If the hearing examiner determined that the burdened party failed to meet [her] burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 858, 860-61 (Wyo. 1994); *Board of Trustees, Laramie County School Dist. No. 1 v. Spiegel*, 549 P.2d 1161, 1178 (Wyo. 1976) (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Hardy v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 42, ¶ 10, 394 P.3d 454, 457 (Wyo. 2017) (quoting *Hood v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2016 WY 104, ¶ 14, 382 P.3d 772, 776 (Wyo. 2016), and *Dale*, ¶ 22, 188 P.3d at 561).

[¶13]  "'Even if an agency record contains sufficient evidence to support the administrative decision under the substantial evidence test, this Court applies the arbitrary-and-capricious standard as a "safety net" to catch other agency action that may have violated the Wyoming Administrative Procedures Act.'"  *Vinson*, ¶ 27, 473 P.3d at 309 (quoting *Rodgers v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 65, ¶ 19, 135 P.3d 568, 575 (Wyo. 2006), and citing *Dale*, ¶ 23, 188 P.3d at 561).  For example, "the arbitrary and capricious standard will apply if the hearing examiner refused to admit testimony or documentary exhibits that were clearly admissible or failed to provide appropriate findings of fact or conclusions of law."  *Dale*, ¶ 23, 188 P.3d at 561.

[¶14]  "We review an agency's conclusions of law de novo and affirm only if its conclusions are in accordance with the law."  *Triplett v. State ex. rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2021 WY 118, ¶ 35, 497 P.3d 903, 911 (Wyo. 2021) (citing § 16-3-114(c)(ii)(A)).

## DISCUSSION

[¶15]  Ms. Valencia maintains the Medical Commission improperly decided she had not met her burden of showing her left foot, ankle, and hammertoe injuries were causally related to her August 2020 right knee injury.  She claims she presented evidence demonstrating her right knee injury led to an altered gait, which in turn caused a second compensable injury (her left foot, ankle, and hammertoe injuries) or, at a minimum, materially aggravated her 20-year old preexisting left foot conditions.  We address each argument separately.

### *Second Compensable Injury*

[¶16]  "Wyoming law has long recognized that a single incident at work can give rise to more than one compensable injury. . . .  This principle, referred to as the second compensable injury rule, applies when 'an initial compensable injury ripens into a condition requiring additional medical intervention.'"  *In re Kaczmarek*, 2009 WY 110, ¶ 9, 215 P.3d 277, 281 (Wyo. 2009) (citing *Baldwin v. Scullion*, 62 P.2d 531, 539 (Wyo. 1936), and quoting *Yenne-Tully v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 12 P.3d 170, 172 (Wyo. 2000)).  "'[A] subsequent injury or condition is compensable if it is causally linked to the initial compensable work injury.'"  *Ross v. State ex rel. Dep't of Workforce Servs.*, 2022 WY 11, ¶ 13, 503 P.3d 23, 29 (Wyo. 2022) (quoting *Ball v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 128, ¶ 24, 239 P.3d 621, 628 (Wyo. 2010), and citing *Alvarez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2007 WY

6

126, ¶ 18, 164 P.3d 548, 552 (Wyo. 2007)). "Our description of the required causal connection between the first and second injuries has varied slightly from case to case but in every case '[t]he employee must show, by a preponderance of the evidence, that it is more probable than not that the second injury was caused by the first.'" *Boylen v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 39, ¶ 11, 506 P.3d 765, 769 (Wyo. 2022) (quoting *Ross*, ¶ 13, 503 P.3d at 29). *See also, Kaczmarek*, ¶ 11, 215 P.3d at 282-83 ("[I]n a second compensable injury case, the claimant must show, by a preponderance of the evidence, that it is more probable than not that there exists a causal connection between the first and second injuries.").

[¶17]  The Medical Commission concluded that because Ms. Valencia's left foot, ankle, and hammertoe injuries were not "so immediately and directly or naturally and probably" the result of her August 2020 right knee injury, expert medical testimony was necessary to establish the requisite link between the two. *Morris v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 119, ¶ 47, 403 P.3d 980, 993 (Wyo. 2017) ("Medical evidence is typically required to [establish the causal connection between the first workplace injury and the second injury] unless the [second injury] is immediately and directly or naturally and probably the result of the workplace [injury]." (citation and internal quotation marks omitted)). *See also, Matter of Lysne*, 2018 WY 107, ¶¶ 18-19, 426 P.3d 290, 296 (Wyo. 2018) ("We have required medical evidence to establish causation when a significant amount of time elapses between the initial workplace injury and the claim, when there is an intervening injury, when there is a preexisting condition, or when the claimant's symptoms and medical history are complex . . . . However, when the medical condition is immediately and directly or naturally and probably the result of the workplace incident, we have not required medical testimony." (citations and internal quotation marks omitted)).  Ms. Valencia does not disagree with this conclusion on appeal. She argues, however, that she presented the necessary medical evidence as both Dr. Johnson and Dr. Grunfeld opined that her left foot, ankle, and hammertoe injuries were caused by her altered gait following her right knee injury.  According to her, the Medical Commission improperly disregarded these opinions.

[¶18]  "The fact-finder in a contested case hearing, in this case [the Medical Commission], must evaluate the medical records and testimony, including medical expert testimony, and determine the weight of the available evidence." *Delacastro v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 40, ¶ 23, 321 P.3d 327, 333 (Wyo. 2014) (citing *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 24, 247 P.3d 845, 852 (Wyo. 2011)).  The Commission "'is entitled to disregard an expert opinion if [it] finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant.'" *Id.* (quoting *Watkins v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 49, ¶ 25, 250 P.3d 1082, 1090-91 (Wyo. 2011), and *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 15, 123 P.3d 143, 148 (Wyo. 2005)).  "'In weighing the medical opinion testimony, the [Commission] considers: (1) the opinion; (2)

the reasons, if any, given for it; (3) the strength of it; and (4) the qualifications and credibility of the witness or witnesses expressing it.'" *Reichenberg v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 36, ¶ 34, 506 P.3d 732, 743 (Wyo. 2022) (quoting *Anastos v. Gen. Chem. Soda Ash*, 2005 WY 122, ¶ 20, 120 P.3d 658, 666 (Wyo. 2005), and *Bando v. Clure Bros. Furniture*, 980 P.2d 323, 329-30 (Wyo. 1999)). We will not overturn the Medical Commission's credibility determinations or its weighing of the evidence unless they are "clearly contrary to the great weight of the evidence." *Hoffman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 164, ¶ 23, 291 P.3d 297, 305 (Wyo. 2012).

[¶19]   The Medical Commission found Dr. Johnson's written opinion that Ms. Valencia's left foot, ankle, and hammertoe injuries "very well could be" the result of her altered gait pattern following her August 2020 right knee injury did not satisfy Ms. Valencia's burden because "could be" is not sufficient under our precedent to satisfy a claimant's burden of proof on causation.  It was correct.  While we do not require "the claimant to prove to a degree of medical certainty that the second injury is due solely to the first injury," the medical testimony must establish that the first injury "contributed to," "most likely caused," or "probably caused" the second injury.  *Hardy*, ¶ 12, 394 P.3d at 458 (citing *Kaczmarek*, ¶ 11, 215 P.3d at 282-83, and *State ex rel. Wyo. Worker's Safety & Comp. Div. v. Armijo*, 2004 WY 116, ¶ 8, 99 P.3d 445, 449-50 (Wyo. 2004)).  "[M]edical testimony in terms of 'can,' 'could,' or 'possibly' is insufficient to meet a claimant's burden of proof." *Id.* (quoting *Boyce v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 9, ¶ 21, 105 P.3d 451, 458 (Wyo. 2005)).

[¶20]   Dr. Johnson clarified during her testimony at the contested case hearing that it was "more probable than not" that Ms. Valencia's left foot, ankle, and hammertoe injuries were the result of her altered gait pattern following her right knee injury.  While this testimony would, under our precedent, be sufficient to establish the requisite causal link between the first and second injuries, the Medical Commission nevertheless discounted it because Dr. Johnson only offered it after being pressed by Ms. Valencia's attorney, she "did not provide a medical explanation as to how the left foot [injuries], which required significant surgical intervention, could result from a contralateral knee injury and a two to three month limp," and her opinion was not supported by her treatment notes.  Ms. Valencia claims the fact Dr. Johnson did not place her observations about Ms. Valencia's left foot pain in her treatment notes is an arbitrary reason to disregard Dr. Johnson's live testimony, which was subject to cross-examination.  In any event, Ms. Valencia maintains Dr. Johnson's treatment notes included her observations that Ms. Valencia had an altered gait and was placing more weight on her left foot as a result of her right knee injury.  She also alleges the treatment notes from October 12 and 15, 2020, document Ms. Valencia's complaints of left foot pain.

[¶21]   The Medical Commission reasonably discounted Dr. Johnson's opinion testimony because it was not supported by her treatment notes.  Dr. Johnson testified Ms. Valencia

8

complained of left foot pain while undergoing physical therapy for her right knee injury. Dr. Johnson stated those complaints should be reflected in her treatment notes. Yet, none of the notes indicate Ms. Valencia was having left foot pain, let alone that the left foot pain was a result of her altered gait following her right knee surgery. Dr. Johnson's treatment notes from October 12 and October 15, 2020, merely reflect that Ms. Valencia "report[ed] that her knee felt good over the weekend [but] she still continues to have left side soreness." There is no indication these notes refer to left foot, ankle, or toe pain as opposed to pain on the left side of her right knee. Indeed, in the immediately preceding treatment notes, Dr. Johnson stated Ms. Valencia reported "her knee felt pretty good after her last treatment," "her knee hurt all weekend and it['s] sore today," and "[h]er knee felt better after [the] last treatment [but she] still has discomfort on the lateral side." Taken in context with the earlier notes, the October 12 and 15 notes appear to refer only to her right knee.

[¶22] The Medical Commission also reasonably rejected Dr. Grunfeld's June 8, 2021, assessment that Ms. Valencia's left foot, ankle, and hammertoe injuries resulted from her altered gait following her August 2020 right knee injury. As the Commission explained, Dr. Grunfeld provided no explanation for how Ms. Valencia's "substantial left foot conditions . . . includ[ing] a total reconstruction of her left foot could occur due to a two to three month altered gait from an injury to a contralateral body part." He also did not state his opinion on causation to a reasonable degree of medical probability or opine that she suffered a second compensable injury as a result of her right knee injury. Moreover, his opinion directly contradicted his March 9, 2021, treatment record noting Ms. Valencia's left foot conditions had been ongoing for several years, thereby indicating they were not caused by the August 2020 workplace accident or the resulting right knee injury.

[¶23] Ms. Valencia argues the Medical Commission's decision that she did not meet her burden under the second compensable injury rule was against the overwhelming weight of the evidence. Again, she relies on Dr. Johnson's causation opinion and faults the Medical Commission for not giving it greater weight than Dr. Nieves' opinion.

[¶24] "When presented with conflicting expert medical testimony, the [Medical Commission] determines the credibility and weight of the experts' opinions." *Stevens v. State ex rel. Dep't of Workforce Servs., Workers' Safety & Comp. Div.*, 2014 WY 153, ¶ 36, 338 P.3d 921, 929 (Wyo. 2014). *See also, Hayes v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 96, ¶ 16, 307 P.3d 843, 849 (Wyo. 2013) ("When conflicting medical opinions are presented at the contested case hearing, the agency has the responsibility, as the trier of fact, to determine relevancy, assign probative value, and ascribe the relevant weight given to the evidence presented." (citation and internal quotation marks omitted)). In fact, "[d]etermining whether a claimant is entitled to benefits where, as here, there exists conflicting medical testimony is precisely the purpose for which the Commission was created." *Watkins*, ¶ 25, 250 P.3d at 1091 (citing *French v. Amax Coal West*, 960 P.2d 1023, 1030 (Wyo. 1998)). As we stated above, we will not overturn the Medical Commission's credibility determinations or its weighing of the evidence unless

they are "clearly contrary to the great weight of the evidence." *Hoffman*, ¶ 23, 291 P.3d at 305.

[¶25] The Medical Commission's decision to give more weight to Dr. Nieves' causation opinion than to Dr. Johnson's was not against the great weight of the evidence. Dr. Johnson's causation opinion changed over time and her testimony concerning Ms. Valencia's left foot pain was not supported by her treatment notes. In contrast, Dr. Nieves' opinion was based on his examination of Ms. Valencia, his review of her medical records, including her prior left foot conditions, was stated to a reasonable degree of medical probability, and was supported by medical research.

[¶26] The Medical Commission's decision that Ms. Valencia failed to meet her burden of showing she suffered a second compensable injury to her left foot, ankle, and hammertoe as a result of her August 2020 workplace accident was supported by substantial evidence.

### *Material Aggravation of a Preexisting Condition*

[¶27] "Preexisting conditions are generally excluded from the definition of compensable injury." *Guerrero*, ¶ 23, 352 P.3d at 269 (citing Wyo. Stat. Ann. § 27-14-102(a)(xi)(F) ("'Injury' does not include . . . [a]ny injury or condition preexisting at the time of employment with the employer against whom a claim is made.")). "However, an employee who has a pre-existing condition may still recover if h[er] 'employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.'" *Id.* (quoting *Dutcher v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 10, ¶ 14, 223 P.3d 559, 562 (Wyo. 2010), and citing *Lindbloom v. Teton Int'l*, 684 P.2d 1388, 1389 (Wyo. 1984), and Larson's Workmen's Compensation Law). "'To prove aggravation of a preexisting condition, a claimant must demonstrate by a preponderance of the evidence that the work contributed to a material degree to the aggravation of the condition.'" *Id.* at 269-70 (quoting *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 118, ¶ 15, 259 P.3d 1161, 1165 (Wyo. 2011), and *Dutcher*, ¶ 15, 223 P.3d at 562). *See also, Langberg v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 39, ¶ 17, 203 P.3d 1098, 1102 (Wyo. 2009) ("It is [the claimant's] burden to prove, by a preponderance of the evidence, his work-related injuries materially aggravated, accelerated, or combined with [a preexisting condition]." (citations omitted)).

[¶28] Ms. Valencia argues the Medical Commission's decision that she had failed to prove her altered gait following her August 2020 right knee injury materially aggravated her 20-year old preexisting left foot conditions is contrary to the overwhelming weight of the evidence. She again relies on Dr. Johnson's and Dr. Grunfeld's causation opinions and maintains the Commission erred in disregarding them and instead agreeing with Dr. Nieves' opinion.

10

[¶29]  The Medical Commission found Ms. Valencia's medical records demonstrated she suffered from preexisting left foot conditions, including removal of a bunion and a corn, correction of a hammertoe, and release of the plantar fascia.  However, while Ms. Valencia claims these conditions were successfully treated over twenty years ago, the record reveals she sought treatment from Dr. Daniel Allen for left foot pain and was diagnosed with sinus tarsi/tenosynovitis of the left foot in February 2017, a mere three years before her right knee injury.  In any event, Ms. Valencia's argument that her altered gait following her right knee injury materially aggravated her preexisting left foot conditions is not supported by the medical evidence.

[¶30]  "Regarding proof of aggravation of a preexisting condition we have stated that 'expert medical testimony ordinarily will be required to establish the link between the worsening of the medical condition and the claimant's work activities, rather than some other factor.'"  *Hayes*, ¶ 19, 307 P.3d at 849 (citing *Boyce*, ¶ 16, 105 P.3d at 456)).  Neither Dr. Johnson nor Dr. Grunfeld opined that Ms. Valencia's altered gait following her right knee injury materially aggravated her preexisting left foot conditions.  In fact, with the exception of knowing that Ms. Valencia had surgery on her hammertoe "years and years" ago, Dr. Johnson was not aware of "any problems [Ms. Valencia] had with her feet."  Dr. Grunfeld's notes reveal he knew Ms. Valencia's left hammertoe was previously corrected, that she had experienced left foot pain for several years before March 2021, and that she had a history of a remote left ankle injury.  Yet, his notes also state that Ms. Valencia told him she had no previous injury to her left foot.  In contrast, Dr. Nieves was aware of her preexisting left foot conditions and determined within a reasonable degree of medical probability that her August 2020 right knee injury did not cause any temporary exacerbations or any permanent material aggravation of those conditions.

[¶31]  Ms. Valencia argues the Medical Commission erroneously relied on *Triplett* in giving more weight to Dr. Nieves' opinion than the opinions of Dr. Johnson and Dr. Grunfeld.  The Medical Commission determined Mr. Triplett had not met his burden of showing that his right hip issues resulted from his work injury.  *Triplett*, ¶¶ 24, 32, 497 P.3d at 909-910.  In doing so, the Commission weighed the expert medical opinions on causation but also relied, in part, on the fact that it had observed Mr. Triplett standing up "three to four times during the hour [contested case] hearing, which indicated to the [Commission] that the source of his pain was related more to the back [than] the hip as persons suffering from hip pain do not generally find relief standing up, rather standing up aggravates the hip pain."  *Id.*, ¶ 31, 497 P.3d at 910 (emphasis omitted).  We upheld the Commission's decision based on its weighing of the evidence, including the expert medical opinions.  *Id.*, ¶¶ 41-45, 497 P.3d at 913-914.  However, we found the Commission acted inappropriately by independently diagnosing the source of Mr. Triplett's pain.  *Id.*, ¶¶ 40-41, 497 P.3d at 913.  We explained that although "'the Medical Commission is tasked with weighing the medical and other evidence presented to it by the parties[,] [i]t is not tasked with providing the equivalent of an independent medical examination and opinion.'"  *Id.*, ¶ 40, 497 P.3d at 913 (quoting *Worker's Comp. Claim of Decker v. State ex rel. Wyo. Med.*

11

*Comm'n*, 2005 WY 160, ¶ 34, 124 P.3d 686, 697 (Wyo. 2005)) (emphasis omitted).  In this case, the Medical Commission relied on *Triplett* only to explain it was "mindful of the role it has been assigned and the parameters of its decision-making authority."  The Commission stuck to its role—weighing only the evidence presented to it and not forming its own medical opinion.

[¶32]  Ms. Valencia maintains the Medical Commission should have followed *Salas v. Gen. Chem.*, 2003 WY 79, 71 P.3d 708 (Wyo. 2003), and provided more weight to the opinions of her treating physicians, Dr. Johnson and Dr. Grunfeld, than to the opinion of Dr. Nieves.  The hearing examiner, relying on the opinion of Mr. Salas' treating physician, determined Mr. Salas had met his burden of showing his workplace accident materially aggravated his preexisting right knee condition.  *Salas*, ¶ 8, 71 P.3d at 711.  We determined the treating physician's opinion provided substantial evidence supporting the hearing examiner's decision.  *Id.*, ¶ 15, 71 P.3d at 714.  *Salas* does not require a factfinder to rely on the opinions of a claimant's treating physician.  Rather, we simply concluded the factfinder's reliance on the treating physician's opinion in that case provided substantial evidence supporting the factfinder's decision.  Mr. Salas' treating physician opined that the workplace accident materially aggravated his preexisting right knee condition.  In contrast, neither of Ms. Valencia's treating physicians opined that her right knee injury or her altered gait following that injury materially aggravated her preexisting left foot conditions.

[¶33]  Ms. Valencia also maintains the Medical Commission erred by relying on Dr. Nieves' opinion because he stated her August 2020 right knee injury did not cause any "permanent" material aggravation of a preexisting condition.  According to Ms. Valencia, our caselaw does not require a "permanent" material aggravation of a preexisting condition.  Citing *Langberg*, the Division maintains a material aggravation of a preexisting condition requires a permanent worsening of the preexisting condition.

[¶34]  Mr. Langberg's treating physician testified that Mr. Langberg's workplace injuries "materially exacerbated" his preexisting condition.  *Langberg*, ¶¶ 7, 18, 203 P.3d at 1100, 1102.  Mr. Langberg argued this opinion satisfied his burden of showing a material aggravation of a preexisting condition because "exacerbate" was synonymous with "aggravate."  *Id.*, ¶ 19, 203 P.3d at 19.  The Division, on the other hand, argued the terms did not have the same meaning.  *Id*.  In so arguing, it relied on the American Medical Association Guides to the Evaluation of Permanent Impairment, which defined "exacerbation" as a "*[t]emporary* worsening of a preexisting condition" and "aggravation" as a "*[p]ermanent* worsening of a preexisting medical impairment."  *Id.*, ¶ 23, 203 P.3d at 1103.  We determined Mr. Langford's treating physician was not using the term "exacerbate" as defined by the Guides because the nature of Mr. Langford's preexisting condition as a progressive degenerative disease was not expected to return to baseline, i.e., it was not temporary.  *Id.*, ¶ 24, 203 P.3d at 1103.  Instead, we found the treating physician used the term "exacerbate" consistent "with its common dictionary definition—to increase in severity."  *Id.*, ¶ 25, 203 P.3d at 1103.  We concluded the treating physician's opinion

12

was sufficient to establish Mr. Langford's workplace injuries materially aggravated his preexisting condition. *Id.*, ¶ 26, 203 P.3d at 1103-04.

[¶35]  We did not hold in *Langberg* that "aggravation" of a preexisting condition requires a "permanent" worsening of the condition.  The only question before us was Mr. Langford's treating physician's intent when  using the word "exacerbate."  In any event, we need not decide here whether "aggravation" of a preexisting condition requires a "permanent" worsening of the condition.  Dr. Nieves opined not only that Ms. Valencia's right knee injury did not cause "any permanent material aggravation" of her preexisting left foot conditions but also that her right knee injury did not cause "any temporary exacerbations" of her preexisting left foot conditions.

[¶36]  The Medical Commission's decision that Ms. Valencia failed to meet her burden of showing her altered gait following her right knee injury materially aggravated her preexisting left foot conditions was supported by substantial evidence.

## CONCLUSION

[¶37]  The Medical Commission's decision that Ms. Valencia did not meet her burden of showing her right knee injury or her altered gait following that injury caused a second compensable injury to her left foot, ankle, and hammertoe or materially aggravated her preexisting left foot conditions was supported by substantial evidence.  We affirm.